## THE PEOPLE OF THE STATE OF ILLINOIS

*v.*

## JOSEPH P. GORDON.

*Opinion filed February 21, 1902.*

1. CONSTITUTIONAL LAW—*section 7 of Medicine and Surgery act of 1899 is not unconstitutional.* Section 7 of the Medicine and Surgery act of 1899, (Laws of 1899, p. 275,) which provides that any person shall be regarded as practicing medicine "who shall treat or profess to treat, operate on or prescribe for any physical ailment or any physical injury or deformity of another," is constitutional.

2. MEDICINE AND SURGERY—*practice of osteopathy or magnetic healing is the practice of medicine.* One who advertises himself as a magnetic healer, and who gives treatments, after diagnosis, by rubbing or kneading the body, for the purpose of freeing the nerve force, in the nature of osteopathic treatment, is practicing medicine within the meaning of section 7 of the Medicine and Surgery act of 1899, notwithstanding he does not use drugs, medicine or instruments; nor is he within the exception in favor of those treating the sick by mental or spiritual means, even though he accompanies his treatment by mental suggestion to his patients that their ailments are not incurable.

*People v. Gordon,* 96 Ill. App. 456, reversed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Winnebago county; the Hon. JOHN C. GARVER, Judge, presiding.

This is an action of debt by the People, for the use of the State Board of Health, against Joseph P. Gordon, to recover a penalty for practicing medicine without a license, contrary to the provisions of the act of 1899, entitled "An act to regulate the practice of medicine in the State of Illinois, and to repeal an act therein named." (Hurd's Stat. 1899, p. 1143.) The suit was originally begun before a justice of the peace in Winnebago county, where there was a judgment for defendant. On the trial, on appeal to the circuit court of that county, at the close of all the evidence, the jury, by direction of the court,

returned a verdict for the defendant, upon which judgment was entered. The Appellate Court for the Second District has affirmed that judgment, and the cause is brought here by the People, for the use, etc., upon further appeal.

So much of the act as is applicable to the case is as follows:

"Sec. 2. No person shall hereafter begin the practice of medicine or any of the branches thereof, or midwifery, in this State without first applying for and obtaining a license from the State Board of Health to do so. * * * Applications from candidates who desire to practice medicine and surgery in all their branches shall be accompanied by proof that the applicant is a graduate of a medical college or institution in good standing, as may be determined by the board. When the application aforesaid has been inspected by the board and found to comply with the foregoing provisions, the board shall notify the applicant to appear before it for examination, at the time and place mentioned in such notice. * * * The examination of those who desire to practice medicine and surgery in all their branches shall embrace those general subjects and topics, a knowledge of which is commonly and generally required of candidates for the degree of doctor of medicine, by reputable medical colleges in the United States. * * * The examination of those who desire to practice any other system or science of treating human ailments who do not use medicines internally or externally, and who do not practice operative surgery shall be of a character sufficiently strict to test their qualifications as practitioners." This section then provides for making rules for the examination by the board, which shall provide for a fair and wholly impartial method of examination; and "that graduates of legally chartered medical colleges in Illinois in good standing as may be determined by the board may be granted certificates without examinations."

194—36

"Sec. 3. If the applicant successfully passes his examination, or presents a diploma from a legally chartered medical college in Illinois of good standing, the board shall issue to such applicant a license authorizing him to practice medicine, midwifery or other system of treating human ailments, as the case may be: *Provided,* that those who are authorized to practice other systems can not use medicine internally or externally or perform surgical operations: *Provided, further,* that only those who are authorized to practice medicine and surgery in all their branches shall call or advertise themselves as physicians or doctors." The section then authorizes the issuing of licenses in such form as the board may determine, in accordance with the provisions of the act, and further provides that for any willful violation on the part of an applicant of any of the rules and regulations of the board governing examination, the board may refuse to issue a license to such applicant.

The fourth section provides for recording certificates, and the fifth for the fees which may be charged for the examination, authorizing certain fees for a certificate to practice medicine and surgery, and the same fee for all other practitioners. Section 6 provides that the board may refuse to issue certificates under certain circumstances therein stated. Section 7 is as follows:

"Sec. 7. Any person shall be regarded as practicing medicine, within the meaning of this act, who shall treat or profess to treat, operate on or prescribe for any physical ailment or any physical injury to or deformity of another: *Provided,* that nothing in this section shall be construed to apply to the administration of domestic or family remedies in cases of emergency, or to the laws regulating the practice of dentistry or of pharmacy. And this act shall not apply to surgeons of the United States army, navy or marine hospital service in the discharge of their official duties, or to any person who ministers

to or treats the sick or suffering by mental or spiritual means, without the use of any drug or material remedy."

Section 9 denounces a penalty against "any person practicing medicine or surgery or treating human ailments in the State without a certificate issued by this board in compliance with the provisions of this act," etc., to be recovered in an action of debt in the name of the State Board of Health, and with the proviso "that this section shall not apply to physicians who hold unrevoked certificates from the State Board of Health, issued prior to the time of the taking effect of this act."

On the trial in the circuit court the plaintiff produced four witnesses, who testified that the defendant had an office in the city of Rockford, on which was the sign, "Dr. Gordon, Healer," or "Magnetic Healer;" that he consulted with the witnesses as to the nature of their ailments and treated them. M. M. Carpenter stated: "I went to his place of business prior to March 21, 1900; went to talk to the doctor; he has two rooms; saw chairs and tables and carpets in his rooms; ordinary writing table in his waiting room; was in his private room off his waiting room, in which there was a kind of a lounge, table, a place where he lays a person; he told me to lay down, and I did so and he gave me treatment; it was a massage treatment—rubbing; he rubbed the muscles of my arms and legs; my stomach bothered me; he rubbed me across there; he used no medicine or instruments whatever, and gave no directions as to diet." Mrs. Minnie Peterson testified: "I know Dr. Gordon and where his place of business is; I was at his office a year ago last June; I took twenty-six treatments; I commenced in June and treated in July, and got through the last of July; I went into his waiting room and into his private room; he told me he could cure me; said he knew if I would let him he could help me, and he treated me; he made an examination and said I was troubled with paralysis and nervousness; he rubbed me in treating me and had me lay down; he ma-

nipulated on me fifteen to twenty or twenty-five minutes; he rubbed my body and bent my limbs; I believe he stated I should walk and use my limbs all I could, so that the blood would get to circulating a good deal; he charged me for his services; he claimed to me he could cure constipation." She also testified he used no instruments or medicines, externally or internally. The other two witnesses testify substantially to the same effect.

The defendant was sworn on his own behalf, and his testimony is here set out at length:

"My name is Joseph P. Gordon; resided in the city of Rockford since a year ago from the first of last April; I am the defendant in this proceeding; my place of business is in the Stewart block, on South Main street, in this city; in my business of treating the sick I do not use any drugs, medicines or material remedies of any kind; I do not use any instruments, nor have I any instruments or drugs in my office; I never have prescribed any medicine or diet or given any prescription of any kind; my treatment and its theory is a magnetic treatment applied to the nervous system, principally, and I work on the muscles to restore the action of the nerves; it is a mental science.

Q. "Do you use what is generally termed 'mental suggestion?' (Objection by counsel for plaintiff; overruled, and exception saved by counsel for plaintiff.)

A. "Yes, sir; it is merely a suggestion to the person, like this: When a person comes in with a disease that they have been told is incurable, we don't go on with that; we give them a mental suggestion to the effect that their case is not incurable; my theory is to get strength and to restore the nerves—to build up the nerve force; like that lady that came in here last Friday; she had paralysis; I told her she had nervous trouble; I treated her to restore the nerve force; she was weak mentally; doctors had told her her case was paralysis; I told her it was nervous trouble, which paralysis is; I gave the

boy who referred to paying five dollars for seven treatments, a half dozen treatments; he stopped the treatment before I wanted him to."

Cross-examination: "I never attempted to get a license from the State Board of Health; I might have told this boy he would have to receive a certain number of treatments; I operated first in the instance of disease like the case of a gentleman who has testified here, caused by obstructions of the nerve somewhere; I removed the cause, working the muscles, freeing the nerve force, and that makes the cure; first I examine them to locate the cause of the disease; before I attempt to make a cure I must know the cause; I first make a diagnosis; then I remove the cause for that condition by working and freeing the nerve force; I could show you better how I do it; it is something a little hard to explain; I get as near to the muscles as I can; if a person is fleshy it takes more force; I use nothing but the hands; if a person has no hands he couldn't make a success of magnetic healing; I distinguish between two different diseases by the nerves; every nerve controls certain functions, and when we locate that nerve we know what is the matter with the patient; I do it by locating the nerve that is obstructed; a patient that had heart trouble and one who had paralysis require the same treatment; when paralysis is located we try through the nerve force to remove the cause; the obstruction is between the paralyzed limb and the brain along the nerve; we treat the nerve to remove the cause; in paralysis, the lesion is between the paralyzed part,—is between that part and the brain; in the case of Carpenter, who has testified, my hand came in contact with his body at the point of the—between the—of the splastic nerve; between these lower ribs,—between the second and first lumbar,—where the splastic nerve goes to the plexus; Mr. Carpenter's trouble was located at that point,—in the solar plexus, back of the stomach; I located his trouble by examination—going over, looking for the trouble—

the contracted condition of the nerve that supplies these points; I locate diseases by examinations; I don't ask questions, necessarily; if it was a case of heart trouble, or if the person says the trouble was in the feet,—cold feet,—I know the cause of the trouble is further up; I can tell by making an examination—by finding the contracted condition of the nerves; I can tell without any questions at all; I do that by examination—by finding the contraction of the nerves; all treatment is done with the hands; a person has to have a good sense of touch; in the case of mental suggestion, I suggest to them that their case is not as they suppose; besides the suggestion that a case is not as bad as is supposed, we operate or manipulate on the body; we work with our hands to remove the cause; I am not a graduate of a medical school; I understand nothing about medicine; I practiced this sort of healing a few months in Louisiana and Missouri before I came to Rockford as a doctor; before coming here I graduated from a school of magnetic healing at Bloomington, Illinois.

Q. "You graduate doctors right here, do you not?

A. "Yes, sir; I teach school; we never prescribe the number of treatments necessary; they ask me how many treatments; I tell them that two fellows will come to me with the same disease and I cure one while I am starting with the other; after I have determined upon their case I tell them to come every day or every other day."

E. D. REYNOLDS, and WARWICK A. SHAW, for appellant:

Appellee practiced medicine within the meaning of the act of 1887. Under the old law, or the Medical Practice act of 1887, it was held that the treatment of a patient by rubbing and manipulating the affected parts was practicing medicine within the meaning of section 10 of the act to regulate the practice of medicine. This court

so held in the following cases: *Eastman* v. *People,* 71 Ill. App. 236; *Jones* v. *People,* 84 id. 453.

Appellee practiced medicine within the meaning of the act of 1899. Under the new law, or the Medical Practice act of 1899, section 7 is a substitute for section 10 of the old law, with the following exception: That there is added on to the clause exempting from the operation of the act surgeons of the United States army, navy or marine hospital service, the words, "any person who ministers to or treats the sick or suffering by mental or spiritual means, without the use of any drug or material remedy." *People* v. *Jones,* 92 Ill. App. 447.

R. K. WELSH, for appellee:

Penal statutes or statutes in derogation of a common right are to be strictly construed. Any restriction or regulation of a useful pursuit or occupation cannot be extended beyond its express and certain terms. *People* v. *Peacock,* 98 Ill. 176; *Cruse* v. *Aden,* 127 id. 231; *Carberry* v. *People,* 39 Ill. App. 506; *Reinecke* v. *People,* 15 id. 241.

No legislative enactment, to be valid in this State, shall embrace more than one subject and that must be expressly covered by the title. Const. sec. 13, art. 4; *Donnersberger* v. *Prendergast,* 128 Ill. 229; *Dolese* v. *Pierce,* 124 id. 140; *People* v. *Institution,* 71 id. 229.

One who does not use drugs, medicines or instruments and who treats only by rubbing or manipulation of the affected parts, does not practice medicine. *Smith* v. *Lane,* 24 Hun, 632; *State* v. *Liffring,* 46 L. R. A. 334; *Nelson* v. *State,* 57 S. W. Rep. 501; *State* v. *Mylod,* 40 Atl. Rep. 753.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

In our view, the only question for decision here is, did the evidence offered upon the trial fairly tend to prove the defendant guilty, within the proper construction of the act?

It is contended by counsel for appellee that section 7 is unconstitutional because the title is not broad enough to include it, and that the act is liable to the objection that it confers special privileges upon certain classes. In answer to these contentions we only deem it necessary to cite the cases of *Williams* v. *People*, 121 Ill. 84, and *People* v. *Blue Mountain Joe*, 129 id. 370, in which these and other objections to the constitutionality of the law are fully discussed and the act sustained. It is true, these decisions were rendered under the acts of July 1, 1877, and July 1, 1887; but neither of them is materially different from the present law, so far as the objections here made are concerned. It is clear, we think, from the several sections of this statute, that the State Board of Health is authorized to divide those who desire to practice medicine in this State into two classes, that is, those who desire to practice medicine and surgery in all their branches, and those who desire to practice any other system or science of treating human ailments without the use of medicine or instruments. Section 7 defines what shall be regarded as practicing physicians, within the meaning of the act, as including both classes, and we are at a loss to perceive how it can be said that the defendant's own testimony does not tend to show that he did treat and operate on patients for physical ailments, within the meaning of that section. It is true, he says his treatment was a mental science; but that statement is completely refuted by his testimony as to what he did, and we think his evidence, as well as that of the witnesses sworn on behalf of the People, at least fairly tended to prove, if it did not fully establish, that he did not use magnetic treatment, as commonly understood. He said: "I first make a diagnosis, then I remove the cause for that condition by working and freeing the nerve force; * * * I get as near the muscles as I can; if a person is fleshy it takes more force." He also flexed, or, as one witness says, bent the limbs. In short, all the

testimony tends to show that he practiced what is known as osteopathy—at least the treatment was of that nature.

It is insisted by appellee that the act does not include persons who do not use drugs, medicines or instruments, and in support of this position he cites *Smith* v. *Lane*, 24 Hun, 632; *State* v. *Liffring*, 46 L. R. A. 334; *Nelson* v. *State Board of Health*, (Ky.) 57 S. W. Rep. 501; *State* v. *Mylod*, (R. I.) 40 Atl. Rep. 753. We have carefully examined these cases, and find that neither of them sustains the contention. The question decided in each of those cases was, whether persons giving treatment, as the defendant did in this case, as osteopaths and as christian scientists were prohibited by the statutes of. those States from administering to the sick and suffering, and it was held they were not. In other words, those decisions simply construe the statutes of their own States, none of which undertake, as does our act, to define the practice of medicine as including all "who shall treat or profess to treat, operate on or prescribe for any physical ailment or any physical injury to or deformity of another," and none of the statutes construed in those cases undertook to classify physicians, as our statute does. It is true, the court said in the *Nelson case*, speaking of the defendant as an osteopath: "Appellant is in no proper sense a physician or surgeon. He does not practice medicine. He is rather on the plane of a trained nurse. If by kneading and manipulating the body he can give relief from suffering, we see no reason why he should not be paid for his labor, as other laborers. Services in kneading and manipulating the body are no more the practice of medicine than services in bathing a patient to allay his fever or the inflammation of a wound. Appellant may not prescribe or administer medicine or perform surgery, but so long as he confines himself to osteopathy, kneading and manipulating the body without the use of medicine or surgical appliances, he violates no law and appellee should not molest him."

We hardly think the large school of osteopathists, and those who believe in their method and system of treatment, would be willing to concede that such treatment is no more than that which a trained nurse might administer. While it may be truthfully said that it is not the practice of medicine in the common acceptation of that term, it cannot be claimed that it does not "profess to treat, operate on or prescribe for any physical ailment or any physical injury to or deformity of another," and certainly it cannot be insisted that such persons do not practice another "system or science of treating human ailments without the use of medicine internally or externally." Section 17 of the statute of Nebraska regulating the practice of medicine and surgery in that State provides: "Any person shall be regarded as practicing medicine, within the meaning of this act, who shall operate on, profess to heal or prescribe for or otherwise treat any physical or mental ailment of another," etc., and the Supreme Court of that State held in *State* v. *Buswell*, 58 N. W. Rep. 728, that the practice of treating patients for ailments by what is known as "christian science" was a violation of that section.

But it is contended that the defendant in this case is shown by the testimony to be exempt from the operation of the statute by the last clause of the proviso to section 7,—that is, that he is a person "who ministers to or treats the sick or suffering by mental or spiritual means, without the use of any drug or material remedy." We are unable to see how, under his own evidence, this position can be maintained. It is true, he does not use "drugs or other material remedy;" neither does he treat the "sick or suffering by *mental or spiritual means*," and therefore whether the word "material" is to be construed as meaning other treatment similar to the use of drugs is wholly immaterial. Very clearly this provision means that those who pretend to relieve the ailments of others by mere mental or spiritual means shall not be considered with-

in the act; but if the defendant, under the proof in this case, can bring himself within that exception, then every one who treats diseases without administering medicine, either externally or internally, can also be brought within the exception. Few, perhaps, if any, physicians attempt to treat the sick and suffering without appealing to the mental faculties, to a greater or less degree, in aid of the remedies they apply or prescribe; but that is not treating the sick by mental or spiritual means.

We all agree that the objects and purposes of this and similar statutes are to protect the sick and suffering, and the community at large, against the ignorant and unlearned who hold themselves out as being possessed of peculiar skill in the treatment of disease; from holding themselves out to the world as physicians and surgeons without having acquired any knowledge whatever of the human system or the diseases and ailments to which it is subject. Without some knowledge of the location and offices of the various nerves, muscles and joints, the manipulation of those parts and the flexing of the limbs cannot be intelligently, if, indeed, safely, practiced. Merely giving massage treatment or bathing a patient is very different from advertising one's business or calling to be that of a doctor or physician, and, as such, administering osteopathic treatment. The one properly falls within the profession of a trained nurse, while the other does not.

We think the circuit court erred in instructing the jury to find for the defendant, and that the Appellate Court erred in affirming that judgment.

*Reversed and remanded.*