## The People of the State of Illinois for the use of the State Board of Health, Appellant, v. J. H. Black, Appellee.

1. PHYSICIANS AND SURGEONS, § 5*—*when person engaged in practice of medicine so as to require license to practice.* A chiropractic who treats various diseases by manipulation of the vertebræ which contain the nerve centers of the particular portion of the body that is diseased and does not use any drugs is engaged in the practice of medicine so as to necessitate the procurance of a license, under J. & A. ¶ 7388, providing that any "person shall be regarded as practicing medicine * * * who shall treat or profess to treat, operate on or prescribe for any physical ailment or any physical injury to, or deformity of, another."

2. PHYSICIANS AND SURGEONS, § 8*—*when instruction in action to recover statutory penalty against chiropractic practicing without license is erroneous.* In an action against one practicing as a chiropractic without a license to recover the statutory penalty, an instruction that if the jury believed "by a preponderance of the evidence that the defendant did not practice medicine, but that his acts were in fact, an adjustment of the human body for the purpose of adjusting the spinal column or other organs for the nerves for the purpose of causing the flow of blood to flow freely, and by so doing that.the blood would flow freely, and thereby the cause removed, then the defendant would not be guilty of practicing medicine in violation of said statute, unless he held himself out or advertised himself as a doctor or physician," is erroneous.

Appeal from the Circuit Court of Gallatin county; the Hon. JULIUS C. KERN, Judge, presiding. Heard in this court at the March term, 1918. Reversed and remanded. Opinion filed July 16, 1918.

EDWARD J. BRUNDAGE, MARSH WISEHEART and BARTLEY & BARTLEY, for appellant.

ROEDEL & ROEDEL, for appellee.

MR. JUSTICE McBRIDE delivered the opinion of the court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

This is an action of debt instituted before a police magistrate by appellant on March 6, 1917, and against the appellee to recover a statutory penalty for practicing medicine in the State of Illinois without a license so to do. The case was appealed to the Circuit Court and there tried, which resulted in a verdict and judgment for the appellee, to reverse which judgment this appeal is prosecuted.

It appears from the record in this case that the appellee is a graduate of the Davenport School of Chiropractics and was located in Gallatin county, Illinois, and for about 18 months prior to the beginning of the suit was located at Junction City in said county. He opened up an office and placed a sign thereon with the words, "Doctor Black, Chiropractic," and carried on the practice of his profession in that office, at times visiting the homes of his patients and there treating them. His theory of ailments was, as he stated it: "To take the pressure off of certain nerves and blood vessels, to relieve this pressure and that evens up the circulation, and so the disease congestion will disappear. This pressure will cause too much blood to flow or too little in certain parts of the body, and that will cause a congestion, will cause a pressure and this pressure on the fine network of nerves will cause a pain. Pressure on a nerve will cause a pain and as soon as you relieve the nerves, these nerves, as they come out through the vertebræ, they are supposed to have, when there is no pressure on one, something like a hundred per cent. of nerve energy, electricity or vitality, or anything you want to call it, and when there is a pressure made on this nerve, there can't be a full hundred per cent. of the nerve energy to this region, and that will throw the blood from one way or the other." He further stated that he finds the seat of the pressure by the vertebræ and then by manipulation of the vertebræ relieves this pressure upon the nerves and that nature then effects the cure. His mode

of treatment principally was to lay the patient down upon his face and then by means of the hands manipulated the vertebræ which contained the nerve center of the particular portion of the body that was diseased. He and the witnesses all say that he did not use any drugs but relied solely upon this manipulation to effect a cure. He treated rheumatism, diseases of the stomach, heart disease, dropsy, liver complaint, paralysis, granulated sore eyes, appendicitis and other diseases, and he and the witnesses stated that his treatment consisted of the adjustment of some misplaced vertebræ to relieve the pressure.

The appellant claims that the verdict of the jury was contrary to the law and the evidence and that the court erred in the giving of appellee's instructions.

By an act of the legislature which became effective on July 1, 1899 (J. & A. ¶ 7378), it was provided that no person should practice medicine, or any of the branches thereof, or midwifery in this State without first applying for and obtaining a license from the State Board of Health to do so, and then prescribes the manner in which the license may be obtained, and a penalty for the violation of this statute. Section 7 of the Act (J. & A. ¶ 7388) defines who are to be regarded as practicing medicine, and provides as follows: "Any person shall be regarded as practicing medicine, within the meaning of this act, who shall treat or profess to treat, operate on or prescribe for any physical ailment or any physical injury to, or deformity of, another." This section then contains a proviso relieving certain persons, but such proviso has no application to the case on trial. It is undisputed that the appellee maintained an office or place of business with a sign thereon, "Doctor Black, Chiropractic," in Junction City; that people came to his office at various times for treatment and were therein treated. That he also went to the homes of some of the individuals and there treated them. He treated

Charles Ginger for rheumatism, Nora Thompson for nervous headaches, George Reardon for progressive paralysis, Jesse Cathlin for heart trouble, Oscar Tadlock for a general breakdown and stomach trouble, Sam Wembro for kidney and bladder trouble, John Woods for toothache and other persons for different diseases; but all of the treatments were made by manipulation of the vertebræ or twisting of the neck with his hands or by pressure upon the spinal column, in some parts with his knees. This was termed by appellee and most of the witnesses in their testimony as being an adjustment of misplaced vertebræ. Different vertebræ were operated upon for the different diseases, the appellee being able, as he claimed, to determine which vertebræ to manipulate, or what part of the spine for the particular disease with which he was confronted. From the testimony of the several witnesses he was quite successful in his treatment and very reasonable in his charges and did in most cases receive compensation for the work performed.

The only question with which we are confronted is, "Do the acts as detailed by the several witnesses constitute a treating, or professing to treat or operating on the patient for any physical ailment?" It is not disputed that he claimed to be able to cure many of these diseases. While it is true he said he did not cure them but he relieved the pressure upon the nerves and nature effected the cure. All any physician could do would be to place a patient in condition for nature to perform its work and effect a cure. It undoubtedly, as the evidence of the doctor shows, requires skill to be able to determine what the disease is and what particular manipulation is required in order to effect the cure, which undoubtedly requires skill and learning along these particular lines, and the very object to be accomplished by this statute is to prevent persons who are not possessed of such skill, or who do not understand the human system and the mode of

treating, from practicing upon afflicted people. Even though the appellee may have fully understood these matters, as he claimed, yet another person without the education might undertake to operate upon and treat different persons for their various afflictions without in fact knowing what the real trouble was, or whether by the particular act or treatment a cure will be effected or the person injured thereby. Very few of the people who have not given such matters a careful study would be able to determine before employing such as to whether they had the ability or not, and the object of this statute is to provide that no one shall be allowed to practice medicine or operate upon or profess to treat persons without they have the requisite knowledge so to do, and this is to be determined by a competent board appointed by the government of the State. "We all agree that the objects and purposes of this and similar statutes are to protect the sick and suffering, and the community at large, against the ignorant and unlearned who hold themselves out as being possessed of peculiar skill in the treatment of disease; from holding themselves out to the world as physicians and surgeons without having acquired any knowledge whatever of the human system or the diseases and ailments to which it is subject. Without some knowledge of the location and offices of the various nerves, muscles and joints, the manipulation of those parts and the flexing of the limbs cannot be intelligently, if, indeed, safely, practiced." *People v. Gordon,* 194 Ill. 560. We think the questions here involved have been fully and definitely settled and determined by the case of *People v. Gordon, supra,* and are of the opinion that the appellee was engaged both in professing to treat and in treating the several witnesses who testified in this case without a license so to do, and that the verdict of the jury was manifestly against the law and the evidence in the case.

Appellant also complains of many instructions given

by the court on behalf of the appellee, particularly the eighth instruction, which is as follows: "And you are further instructed that if you believe by a preponderance of the evidence that the defendant did not practice medicine, but that his acts were in fact, an adjustment of the human body for the purpose of adjusting the spinal column or other organs for the nerves for the purpose of causing the flow of blood to flow freely, and by so doing that the blood would flow freely, and thereby the cause removed, then the defendant would not be guilty of practicing medicine in violation of said statute, unless he held himself out or advertised himself as a doctor or physician." This instruction is in conflict with section 7, defining who are to be regarded as practicing medicine, and in conflict with the construction of this section as placed upon it by the Supreme Court in the case of *People v. Gordon, supra,* and was both misleading and erroneous and should not have been given by the court.

Other objections have been urged by appellant in its brief, but we do not deem it necessary to give the objections any further consideration as sufficient has already been said to indicate clearly the position of this court upon the questions involved.

We are of the opinion that the verdict of the jury was manifestly against the evidence and the law and that the instruction referred to was erroneous and misleading and should not have been given, and the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*