(No. 14738.—Judgment reversed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, vs.
ROBERT E. SCHAEFFER, Appellant.

*Opinion filed December 19, 1923—Rehearing denied Feb. 13, 1924.*

1. MEDICINE AND SURGERY—*an osteopath practices medicine within meaning of section 7 of Medical Practice act.* Under the definition of practicing medicine, as given in section 7 of the Medical Practice act of 1899, an osteopath, or anyone practicing the various branches of osteopathy, practices medicine when he treats or professes to treat, operates on or prescribes for, any physical ailment or any physical injury or deformity.

2. SAME—*Medical Practice act of 1899 is void in its application to certain osteopaths.* The Medical Practice act of 1899, in permitting graduates of regular medical schools to be given certificates to practice without taking an examination, and at the same time requiring those who desire to practice other systems of treating human ailments to take an examination for a certificate and forbidding them to practice surgery or even to take an examination for a license without having graduated from a medical school in good standing, is void in its application to those osteopaths who may have studied in any college or hospital the subjects necessary for the practice of surgery and are able to pass an examination therein. (*People v. Gordon,* 194 Ill. 560, distinguished.)

3. SAME—*invalidity of Medical Practice acts does not affect the legality of licenses.* The Medical Practice acts of 1917 and 1899 are invalid only as to those osteopaths and others whose constitutional rights are infringed by the unlawful discrimination against them, and such invalidity does not affect the legality of any license issued under such acts to practice medicine or surgery.

FARMER, C. J., and THOMPSON, J., dissenting.

APPEAL from the Municipal Court of Chicago; the Hon. THEODORE F. EHLER, Judge, presiding.

MCCORMICK, KIRKLAND, PATTERSON & FLEMING, (PERRY S. PATTERSON, and LOUIS G. CALDWELL, of counsel,) for appellant.

EDWARD J. BRUNDAGE, Attorney General, (CLARENCE N. BOORD, of counsel,) for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

The municipal court of Chicago rendered a judgment of $100 in favor of appellee, the People of the State of Illinois, for the use of the Department of Registration and Education, against Robert E. Schaeffer, appellant, in an action of debt in a trial before the court without a jury. The statement of claim charged the violation of the Medical Practice act of 1899, section 9 of which provides: "Any person practicing medicine or surgery or treating human ailments in the State without a certificate issued by this board in compliance with the provisions of this act * * * shall, for each and every instance for such practice or violation, forfeit and pay to the People of the State of Illinois, for the use of said board of health, the sum of $100 for the first offense and $200 for each subsequent offense, the same to be recovered in an action of debt," etc.

The two defenses made before the municipal court were, first, that appellant's act, which he conceded to be practicing surgery without a license so to do, is not penalized by the statute; and second, that the Medical Practice act of 1899, and particularly sections 2, 3 and 7 thereof, are invalid or unconstitutional,—which latter defense was specifically set up by his affidavit of defense. The appeal is therefore direct to this court.

The facts constituting the violation of the statute, briefly stated, are, that in February or March, 1921, in the city of Chicago, appellant treated Mrs. Blanche Mehlen for a uterine hemorrhage. In the operative work he performed on Mrs. Mehlen he used a vaginal speculum, a vaginal bracing forceps, a curette, and an electric light. He removed a couple of clots of blood out of the cervix inside of the uterus but did not make a complete curettage. He directed the attending nurse to cleanse the external parts and the parturient canal with antiseptics.

As section 9 of the act imposes a penalty upon any person practicing surgery without such certificate the appellant

is within the prohibition of the statute, and the judgment must stand unless his second claim that the statute denies to him a constitutional right is maintained.

Section 2 of the act of 1899 is as follows: "No person shall hereafter begin the practice of medicine or any of the branches thereof, or midwifery, in this State without first applying for and obtaining a license from the State Board of Health to do so. Application shall be in writing, and shall be accompanied by the examination fees hereinafter specified, and with proof that the applicant is of good moral character. Applications from candidates who desire to practice medicine and surgery in all their branches, shall be accompanied by proof that the applicant is a graduate of a medical college or institution in good standing, as may be determined by the board. When the application aforesaid has been inspected by the board and found to comply with the foregoing provisions, the board shall notify the applicant to appear before it for examination, at the time and place mentioned in such notice.

"Examinations may be made in whole or in part in writing by the board, and shall be of a character sufficiently strict to test the qualifications of the candidate as a practitioner. The examination of those who desire to practice medicine and surgery in all their branches shall embrace those general subjects and topics, a knowledge of which is commonly and generally required of candidates for the degree of doctor of medicine, by reputable medical colleges in the United States. The examination of those who desire to practice midwifery shall be of such a character as to determine the qualification of the applicant to practice midwifery. The examination of those who desire to practice any other system or science of treating human ailments who do not use medicines internally or externally, and who do not practice operative surgery shall be of a character sufficiently strict to test their qualifications as practitioners.

"All examinations provided for in this act shall be conducted under rules and regulations prescribed by the board, which shall provide for a fair and wholly impartial method of examination: *Provided,* that graduates of legally chartered medical colleges in Illinois in good standing as may be determined by the board may be granted certificates without examinations."

The material parts of sections 3 and 7 of said act, so far as applicable to this case, are the following:

"Sec. 3. If the applicant successfully passes his examination, or presents a diploma from a legally chartered medical college in Illinois of good standing, the board shall issue to such applicant a license authorizing him to practice medicine, midwifery or other system of treating human ailments, as the case may be: *Provided,* that those who are authorized to practice other systems cannot use medicine internally or externally or perform surgical operations: *Provided further,* that only those who are authorized to practice medicine and surgery in all their branches shall call or advertise themselves as physicians or doctors: *And provided further,* that those who are authorized to practice midwifery shall not use any drug or medicine or attend other than cases of labor."

"Sec. 7. Any person shall be regarded as practicing medicine, within the meaning of this act, who shall treat or profess to treat, operate on or prescribe for any physical ailment or any physical injury to or deformity of another: *Provided,* that nothing in this section shall be construed to apply to the administration of domestic or family remedies in cases of emergency, or to the laws regulating the practice of dentistry or of pharmacy. And this act shall not apply to surgeons of the United States army, navy or marine hospital service in the discharge of their official duties, or to any person who ministers to or treats the sick or suffering by mental or spiritual means, without the use of any drug or material remedy."

310—37

On the second point raised by appellant, his testimony and the testimony of Dr. George A. Still established, without contradiction, the following facts: Appellant entered the American School of Osteopathy, at Kirksville, Missouri, in which Still was professor of surgery and chief surgeon of its hospitals, on January 29, 1911, and completed the four-year course of that institution in January, 1915, and received the degree of Doctor of Osteopathy. His course of studies embraced surgery, which he studied during the last two years of his attendance in said school, and also embraced the subjects of obstetrics and gynecology. The text books on surgery that are used and taught at the school are the same text books that are used and taught at all modern schools that teach the doctrine of healing by the use of drugs and medicines or the modern schools of the allopaths, who ordinarily style themselves "The Regulars," to-wit: The text books of Rose-Carless, Buck & Bryant, Whorton, DaCosta, Foote, Lovett and Young. Surgery is taught and practiced in the same manner at said school as it is taught and practiced in the modern schools of the Regulars and by their graduates, and the course of surgery in the school is as thorough and as complete as it is in such modern schools. This was positively testified to by Dr. Still, who is himself a graduate from Northwestern Medical College of Chicago and who by investigation has ascertained said facts. The evidence specifically shows that appellant in his course aforesaid studied and passed courses in anatomy, histology, general and physical chemistry, physiology, bacteriology, organic and physiological chemistry, embryology, demonstrative anatomy, pathology, hygiene, public health, dietetics, toxicology, dissection, regional and applied anatomy, physical diagnosis, neurology, special pathology, general surgery, eye, ear, nose and throat, obstetrics, clinical practice, skin and venereal diseases, pediatrics, operative surgery, gynecology, laboratory diagnosis, and also osteopathic therapeutics, to-wit, the principles of osteopa-

thy, practice of osteopathy, osteopathic mechanics and osteopathic clinics. This course includes the subjects taught by medical schools in good standing except the therapeutics of those schools and materia medica. Appellant's education and training necessarily embraced the study of various drugs that are used in connection with surgical operations, such as disinfectants, antiseptics, narcotics, etc., and other drugs or medicines applied externally. After graduating from the Kirksville school appellant began practice in Minnesota as an osteopath until he went into the army, in June, 1918. He was in the rehabilitation or development department of the army for six months, after which he returned to his practice in Minnesota. He was licensed as an osteopath in Illinois on November 17, 1920, by reciprocity as to the written part and by examination as to the practical. He attended high school in his home town for two years and thereafter entered the Leander Clark College at Toledo, Ohio, and left there in 1911. He has a degree of Bachelor of Arts as well as of Doctor of Osteopathy, and a special diploma for a fellowship in bacteriology from the American School of Osteopathy.

It is not the claim of the People that appellant was not competent to perform the operation that he did perform on Mrs. Mehlen, or that he did not perform it in the same manner and by the same means as it would have been performed by any physician and surgeon licensed to practice medicine and surgery in all their branches under the act aforesaid. There is no complaint of the results obtained by this operation. The simple charge and claim of the People is that he violated the statute by performing the act of surgery without the certificate or license required by the act. Appellant's claim is that the act of 1899 is void because it discriminates against applicants for license to treat human ailments in this State who are educated and are graduates in osteopathy, and in favor of those who are educated in medicine and surgery in the medical colleges, and that the act

is therefore in contravention of the constitution of this State and also of the Federal constitution. Appellant also contends that the Medical Practice act of 1917 was in substance and in fact declared void by the decision of this court in the case of *People* v. *Love,* 298 Ill. 304. This position or contention is questioned by the People in this case. In that case the act of 1917 was declared void as to those who practice any system of treating human ailments without the use of drugs or medicine and without operative surgery. The question now before us is whether or not the act of 1899 is binding on appellant.

Under the definition of practicing medicine, as given in section 7 of the act, an osteopath, or anyone practicing in the various branches of osteopathy, is practicing medicine when he treats or professes to treat, operates on or prescribes for, any physical ailment or any physical injury to or deformity of another, yet he cannot practice surgery in Illinois under the provisions of the act, or be examined for license to do such practice, unless he is a graduate of a medical college or institution in good standing, no matter how great may be his attainments in this branch of the treatment of human ailments or how high the standard of the school in which he received his surgical training. Sections 2 and 3 of the act specifically provide that no applicant can be permitted to take an examination to practice medicine and surgery in all their branches, or be permitted to practice medicine and surgery in all their branches, unless he is a graduate of a medical college in good standing, as may be determined by the board. The second sentence of the second paragraph of section 2 indicates clearly that such candidates or applicants for license must be graduates of a reputable medical college or colleges in the United States that teach the practice of medicine and surgery by the use of drugs and medicines and surgical instruments, which colleges do not, as is well known, teach any other system of healing, particularly the system of healing as taught and

practiced by osteopaths and the various branches of that system. It is, perhaps, also true that nine out of every ten of such medical colleges teach and practice the system commonly known as allopathy, whose practitioners style themselves "The Regulars." At any rate, it is made clear by the provisions of sections 2 and 3 that one who is licensed to practice medicine and surgery in Illinois in all their branches under this statute is licensed and authorized to practice medicine, midwifery and surgery in all their branches and in all the systems of treating human ailments, including the system taught by osteopaths, without being required to be a graduate of a school of osteopathy, or even to study the principles or the system of osteopathy. This is made clear also by the first sentences of sections 3 and 7. Under the definition given in section 7 there can be no doubt that the words "medicine and surgery in all their branches," as used in section 2, mean medicine and surgery as taught and practiced by allopaths, homeopaths, eclectics, osteopaths and all other known practitioners treating human ailments, and that one who is licensed to practice medicine and surgery in all their branches is licensed to practice all of said systems. There is no provision in this act whereby a graduate of a college of osteopathy may be licensed to practice osteopathy and surgery, including midwifery, or whereby he may be examined to practice the same, unless he is also a graduate of one of the medical schools aforesaid. He cannot practice osteopathy in Illinois unless he be examined under the provisions of this act, although he may be a graduate of a reputable college in Illinois in good standing that teaches the system of osteopathy. A graduate of a medical college of Illinois in good standing, as determined by the board, may practice medicine and surgery in all their branches without having to take an examination. The act does not even indicate in any manner the subjects upon which an osteopath must be examined to practice osteopathy. His examination for such practice "shall be of a character sufficiently strict

to test their qualifications as practitioners," and his entire examination is at the pleasure of the board, while the character of the examination of a student of medicine is sufficiently indicated and specified by the act. The act even assumes that the osteopath does not use medicines of any kind externally and does not study or practice operative surgery. This record shows that osteopaths have, and particularly the appellant has had, training and education in the practice of surgery and obstetrics equal to that of graduates of the medical colleges, and that osteopaths are taught in their schools to administer certain drugs or medicines externally. To make the discrimination against osteopaths and their humiliation complete, section 3 of the act provides that only those who are authorized to practice medicine and surgery in all their branches shall call or advertise themselves as physicians or doctors.

We think there can be no question whatever that this statute discriminates against appellant as an osteopathic physician and in favor of the graduates of the medical schools, as contended by him. It requires him or a graduate of his school, after spending four years in such graduation, to continue his college education for a further time, and perhaps four years longer until he has become a graduate of a medical school, before he can even be permitted to be examined for license to practice osteopathy and surgery, while a graduate of a medical college is permitted, without further study, to practice medicine and surgery. In the second place, he is required to study the therapeutics of the allopaths or other medical schools which he does not desire to use in his practice before he can practice osteopathy and surgery, while the graduate of a medical school is not required to graduate in osteopathy or to study osteopathic therapeutics, and yet he may be licensed to practice, and may practice, osteopathy. In the third place, if an osteopath attends a medical college for the purpose of graduation, the probabilities are that he will be required to repeat in the medical

college the study of all those subjects, including surgery, midwifery and gynecology, and all the other studies that we have above enumerated as having been passed by him in his own school, before he can begin the practice of surgery. The very great prejudice existing among many physicians of the medical schools against the osteopaths, and of the osteopaths against those of the medical schools, is well known. This statute recognizes both systems as meritorious because it allows both to treat human ailments according to their system, and it discriminates against the osteopath and seems to place the examinations of osteopaths to practice osteopathy entirely at the will and discretion of a medical board, as no one other than those educated in the medical system are qualified, under the act, to conduct the examinations provided for by it. This statute therefore tends to deprive the osteopaths of their constitutional right to practice surgery, who are, so far as this record shows, just as efficient and as well prepared by college and hospital training to practice surgery as are the physicians of the medical schools. The act is therefore void as to such physicians so deprived.

We are only concerned with the question whether this act is unconstitutional by reason of unlawful discrimination, as charged. As we have previously said in other cases, we have no leaning for or against either system or either practitioner. It has been demonstrated over and over again that there is merit in both systems, and neither should be unjustly penalized by statutes which permit unlawful discrimination. This statute is in contravention of the fourteenth amendment of the Federal constitution, which provides that no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law. It also violates the provisions of our bill of rights that no person shall be deprived of life, liberty or

property without due process of law, and that no law impairing the obligation of contracts or making any irrevocable grant of special privileges or immunities shall be passed. In the passage of this statute the legislature evidently overlooked the fact that it discriminates against osteopaths, as already shown. It is a fundamental principle of this government that its people have the right to make constitutions that will guard them against the tyranny of statutes that permit unlawful discrimination, however innocently or inadvertently made, and courts are required to regard their constitutional oaths and declare every such statute void when it conclusively appears that such act is unconstitutional.

Our attention has been called to the fact by the People in this case that said act has been held constitutional in the case of *People* v. *Gordon,* 194 Ill. 560, and cases there cited. In those cases no question of discrimination between the various systems of the practice of medicine or of healing was raised and they are not decisive of the issues raised in this case. We place this decision, however, on the distinct ground that the act is clearly shown to be invalid as to those who are denied their constitutional rights and that the issues here involved were not involved or passed on in the cases referred to. We are to be further understood as holding that this act is merely void as to those persons who are denied constitutional rights, and that neither this decision nor the decision in the *Love case* in any way affects the legality of any license issued under any medical practice act of this State.

For the foregoing reasons the judgment of the municipal court is reversed.          *Judgment reversed.*

FARMER, C. J., and THOMPSON, J., dissenting.