## The People of the State of Illinois ex rel. Louis C. Hanavan, Appellee, v. Martin O. Heckard and Herman N. Bundesen, Appellants.

### Gen. No. 31,205.

1. CENSUS AND VITAL STATISTICS—*powers of registrar of vital statistics.* The duties of the registrar of vital statistics of Chicago and of the State department of public health as to birth certificates under Cahill's St. ch. 65a, ¶¶ 28, 33, 34, are specified and purely ministerial with no judicial power or right whatever to refuse to accept and file a birth certificate, stating the required statutory facts and certified by a physician with an unrevoked license from the department of registration and education.

2. PHYSICIANS AND SURGEONS—*right of licensed osteopath to practice obstetrics.* One who holds a license by the express terms of which he is "a duly licensed osteopathic physician" entitled to practice "in accordance with the tenets of the osteopathic school," of which obstetrics is a branch, who handled a large number of obstetrical cases for several years without any objection to the birth certificates signed by him and who was refused examination in obstetrics only on the ground that no such examination for osteopaths was provided, and who was professor of obstetrics in an osteopathic college, has the right to practice obstetrics.

3. PHYSICIANS AND SURGEONS—*time for examination of osteopaths on subject of obstetrics.* The legislature intended in passing the section found in Cahill's St. ch. 91, ¶ 9, that the examination in obstetrics therein provided for osteopathic physicians should be taken at the same time as their examination for a license and not after one had already been issued.

4. PHYSICIANS AND SURGEONS—*rights of osteopath to practice obstetrics without special license.* A license to practice osteopathy, which includes obstetrics, issued to an osteopathic physician before the Medical Practice Act, Cahill's 1923 St. ch. 91, and continued in force by paragraph 23, thereof, but no provision for a special license to practice obstetrics being provided in such cases entitles him to practice obstetrics since he is fully qualified and the legislature cannot deprive him arbitrarily of his constitutional right to practice his profession.

5. PHYSICIANS AND SURGEONS—*construction of provisions governing examination of drugless practitioners.* The provisions of Cahill's St. ch. 91, ¶ 12, providing examinations for drugless healers wishing to practice medicine and surgery, is not meant to apply to an osteopathic licensee who wishes to be examined solely as to his qualifications to practice obstetrics in order to remove any question as to his right to do so.

6. PHYSICIANS AND SURGEONS—*necessity for licensed osteopath's taking examination as midwife to practice obstetrics.* In order to practice obstetrics in Illinois an osteopathic physician who secured his license before the passage of Cahill's St. ch. 91, is not required to take the examination provided in paragraph 11 thereof, for a license for midwifery, which he does not want and which would not enable him to carry on his practice as obstetrician.

Appeal by defendants from the Superior Court of Cook county; the Hon. HOSEA W. WELLS, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1926. Affirmed. Opinion filed March 29, 1927.

FRANCIS X. BUSCH, Corporation Counsel, and ROY J. EGAN, Assistant Corporation Counsel, for appellants; CORA B. HIRTZEL, ROY S. GASKILL and W. ARNOLD AMBERG, Assistant Corporation Counsel, of counsel.

KIRKLAND, PATTERSON & FLEMING, for appellee; LOUIS G. CALDWELL, of counsel.

MR. JUSTICE FITCH delivered the opinion of the court.
This is a mandamus proceeding. The question involved is whether the department of public health and

its local representative, the registrar of vital statistics of the city of Chicago, are required to accept and place on file, as matters of public record, birth certificates made by one who was duly licensed prior to the passage of the Medical Practice Act of 1923 to practice as an osteopathic physician but has no other license to practice obstetrics or midwifery.

The relator, Dr. Hanavan, holds a certificate from the department of registration and education dated in June, 1918, which states that he is a "duly licensed osteopathic physician," and is "entitled to treat human ailments without the use of drugs or medicine, and without operative surgery, and to practice such treatment in accordance with the tenets of the osteopathic school of practice." After receiving his license, he engaged in practice as an osteopathic physician, specializing in obstetrics. During the following seven years, he successfully handled approximately 450 obstetrical cases. After each birth, he made and filed with the local registrar (the defendant Dr. Martin O. Heckard) a birth certificate as the "attending physician," pursuant to the requirements of section 12 of the Vital Statistics Act, Cahill's St. ch. 65a, ¶ 28. In signing these birth certificates, Dr. Hanavan wrote after his name the initials "D. O.," meaning doctor of osteopathy.

All his certificates were accepted and filed by the local registrar, apparently without question, until the year 1925. In the summer of that year he learned, however, that several of them had never been filed, for the reason, as stated, that they were "not in proper form." Dr. Heckard, the local registrar, testified that acting on the instructions of Dr. Rawlings, the director of the State department of public health, he had refused to file them, upon the sole ground that Dr. Hanavan was not authorized to file such a certificate because he "is not a licensed practitioner of medicine

and surgery in all the branches, and is not a licensed midwife.''

It further appears, from the answer of the defendants, that they emphasized their refusal by sending a representative of the health department to ask the father of each of the children mentioned in the rejected certificates to fill out and present a birth certificate certified *by such father,* ''because there was no birth certificate on file'' in that department ''according to the form'' required by statute.  The record shows that the only change made by Dr. Hanavan in the form issued by the health department was to cross out the initials ''M. D.'' and the word ''Midwife,'' which were printed at the end of the blank space for the signature of the attending physician, and to insert in lieu thereof the initials ''D. O.'' after his signature.

After eight of his birth certificates had been thus refused, Dr. Hanavan filed his petition for mandamus to compel defendants to accept and file them as public records.  Defendants answered the petition, claiming that they were justified in their refusal for the reasons above stated.  A hearing was had and a writ of mandamus was awarded.  Defendants appealed.

The evidence on behalf of the petitioner is uncontradicted.  It shows that after a preliminary education in the grammar school and four years in high school, Dr. Hanavan entered the Chicago College of Osteopathy in 1913, where he pursued a full 4-year course of study, graduating in June, 1917; that his course of study at that college covered exactly the same subjects as the medical colleges cover, with the exception of materia medica, which was given in a different form; that obstetrics is a branch of osteopathy, the study of which is compulsory in osteopathic colleges, where it is taught ''in the same fashion'' as in medical colleges; that he took the course in obstetrics prescribed by his college; that he studied the same obstetrical textbooks as the medical schools use, and

116　　Appellate Courts of Illinois.

People ex rel. Hanavan v. Heckard, 244 Ill. App. 112.

that the time given to the study of obstetrics in his college was even greater than that given in the medical colleges; that he also took a 2-year postgraduate course in obstetrics and surgery and received a certificate from his college to that effect; that in June, 1918, he took the State examination for what is popularly known as a "drugless license," passed the examination and received a license in the form above stated; that his examination covered the same subjects as examinations given to applicants for medical licenses, with the exception of materia medica, obstetrics and surgery, upon which subjects the examining board at that time refused to permit him to be examined; that after the Medical Practice Act of 1923 was enacted, he applied to the department of registration and education for a special examination in obstetrics, but was refused such an examination for the stated reason that "they had not fully interpreted the law"; and that later the department ruled that such special examinations in obstetrics could be given only to those applicants for osteopathic licenses who graduated *after the Act of 1923 was passed.*

In the argument made in the trial court, the trial judge suggested that it was not the province of the department of public health to question the authority of any physician to make and file birth certificates so long as he holds a physician's license regularly issued to him by the department of registration and education. In our opinion, the suggestion was pertinent and of much force. It was stipulated on the trial "that the only thing wrong with these certificates as presented was the fact that they claimed in the Department that Dr. Hanavan was an osteopath and not a licensed M. D. or midwife." By the terms of his license, Dr. Hanavan was authorized in terms to practice as an "osteopathic physician." In *People v. Siman,* 278 Ill. 256, it was held that one who holds such a license is a "legally qualified physician" within

the meaning of those words as used in the Vital Statistics Act and entitled to make the *death* certificates required to be made by section 7, Cahill's St. ch. 65a, ¶ 23, of that act.   Section 12, Cahill's St. ch. 65a, ¶ 28, of the same act requires *birth* certificates to be made by the "attending physician."   There is nothing in that act requiring the certifying physician in either case to be "a licensed M. D." or preventing a licensed "D. O." from making such certificates.

Section 18 of the Vital Statistics Act, Cahill's St. ch. 65a, ¶ 34, requires the local registrar to examine birth certificates which are presented, and if any such certificate "is incomplete," the registrar shall at once notify the person who made it and "require him or her *to supply the missing items,* if they can be obtained." The same section requires the certificates to be numbered, marked, filed, recorded and copies to be deposited with the county clerk.   The originals are required to be sent, on the tenth day of each month, to the department of public health.   Section 17, Cahill's St. ch. 65a, ¶ 33, provides that the department shall examine "the certificates received monthly from the local registrars and *if any such are incomplete or unsatisfactory shall require such further information to be furnished as may be necessary to make the records complete and satisfactory."*   The words "satisfactory" and "unsatisfactory" in this section clearly refer to the statistical and genealogical "information" the birth certificates are required to contain, and not to the kind of college degree held by the attending physician.

Under these sections, the duties of the registrar and of the department of public health in such cases are particularly specified and are purely ministerial.   The act gives them no judicial powers, nor any right, directly or indirectly, to refuse to accept and file a birth certificate which states the facts required by the statute to be stated therein, when certified by an attending

physician who holds an unrevoked license from the department of registration and education to practice as a physician.

But if it be conceded that the right of the relator to a writ of mandamus against defendants on the theory suggested is a doubtful right only, not justifying the issuance of a peremptory writ, then the question chiefly discussed in the briefs of counsel becomes important and material, viz, whether, on the facts shown, Dr. Hanavan has the right to practice obstetrics under the license he now holds. There are two reasons, both valid in our opinion, why this question must be decided in his favor.

The first reason is based upon the evidence in this case. By the express terms of his license, Dr. Hanavan is "a duly licensed osteopathic physician," entitled to practice as such "in accordance with the tenets of the osteopathic school of practice." It appears from this record, as an uncontradicted fact, that "obstetrics is a branch of osteopathy," recognized and taught as such by the osteopathic colleges, and practiced as such by osteopathic physicians in the same manner and by the same means, except as to the use of drugs and operative surgery, as it is taught in the medical schools and practiced by medical doctors. Under this evidence, the theory of defendants that Dr. Hanavan's license does not permit him to practice obstetrics is no more tenable than if his license was to practice medicine in all its branches.

It appears that it was through no fault of his that he was never examined in obstetrics. He applied for such an examination twice, once before and once after the Act of 1923 became effective, and on both occasions his request was refused, apparently on the theory that there was and is no statutory provision requiring or authorizing a graduate of a school of osteopathy to take an examination. The evidence shows that the relator was fully qualified both by study and experience

to practice obstetrics.   In addition to the testimony as to his qualifications already mentioned, it appears from a catalog introduced in evidence that in 1922 he was a member of the faculty and an associate professor of obstetrics in the college from which he graduated.

The second reason is based partly on the evidence and partly on the law applicable thereto.   The relator's license was issued in 1918.   The present Medical Practice Act, Cahill's St. ch. 91, which was approved June 30, 1923, expressly repeals the prior acts of 1899 and of 1917, but contains a provision (sec. 22) giving to all valid licenses issued under any prior act the same force and effect as licenses issued under the Act of 1923.

In *People v. Love,* 298 Ill. 304, decided in June, 1921, the Act of 1917 was held to be discriminatory and void in so far as it purported to apply to those who practice any system of treating human ailments without the use of drugs or medicine and without operative surgery.   In its opinion the court held that the right to follow any lawful occupation or profession, such as the practice of medicine or the law, is a fundamental right of citizenship, and such profession or occupation is "property" within the meaning of the constitutional provision as to due process of law and is also included in the right to liberty and the pursuit of happiness; that while the legislature, in the exercise of the police power, may make reasonable requirements as to the examination and qualifications of those intending to practice medicine, yet such requirements must not be arbitrary nor discriminatory.   The defendant in that case was a chiropractor, a graduate of a well-known school of chiropractic, but had no license to practice in Illinois.   By the decision, a fine imposed on him for practicing without a license was reversed.

In *People v. Schaeffer,* 310 Ill. 574, decided in December, 1923, the defendant was licensed to practice in Illinois as an osteopathic physician, and the depart-

120    APPELLATE COURTS OF ILLINOIS.

People ex rel. Hanavan v. Heckard, 244 Ill. App. 112.

ment of registration and education recovered a judgment against him for performing a surgical operation without being licensed to practice surgery, it being alleged that this was a violation of the Medical Practice Act of 1899. The court held, on the principles declared in the *Love* case, *supra,* that the Act of 1899 was void as to the defendant because it deprived him of his constitutional right to practice surgery when the record showed that he was ''just as efficient and as well prepared by college and hospital training to practice surgery as are the physicians of the medical schools.'' (See page 583 of the opinion.)

The *Schaeffer* case, *supra,* was followed by the similar case of *People v. Graham,* 311 Ill. 92, decided February 19, 1924. The opinion in that case said: ''There was no provision of the act (of 1899) under which a license to practice surgery could have been given to the defendant. *The right to such a license was limited to a class to which he did not belong, and as the law does not require a useless act to secure a right, the defendant was not called upon to apply for a license that could not be granted.*''

The present Act of 1923, prescribing the qualifications and providing for examinations of persons desiring licenses to practice any system of treating human ailments, is a revision of the prior acts and in a general way corresponds to the form of the Act of 1917, which was rewritten with the apparent intention of removing the discriminatory features and supplying the omissions of the prior acts.

Section 9, Cahill's St. ch. 91, ¶ 9, provides that applicants ''who seek to practice any system or method of treating human ailments without the use of drugs or medicines and without operative surgery'' shall pass the same examination as that required of applicants who seek to practice medicine in all its branches ''excepting therefrom materia medica, therapeutics, surgery, obstetrics, and theory and practice,'' but that ''if the applicant is a graduate of a profes-

sional school, college or institution in which obstetrics was taught to him as well in the judgment of the department as such subject was taught at the same time in medical colleges in the United States reputable and in good standing in the judgment of the department, he may upon his request be examined in obstetrics.'' This is the first provision found in any Illinois statute, permitting or requiring an applicant for a drugless license to be specially examined in obstetrics.

Section 11, Cahill's St. ch. 91, ¶ 11, provides that three kinds of licenses may be issued ''to applicants passing examinations therefor'' (1) to practice medicine in all of its branches; (2) to treat human ailments without the use of drugs or medicines and without operative surgery, ''the applicant under such a license to be specifically restricted by the terms thereof to the practice of the system or method which he specifically designated in his application as the one which he would undertake to practice, *but such of these applicants as shall have successfully passed the examination in obstetrics under the requirements of section 9 of this Act shall also be specifically licensed in the same instrument to practice obstetrics''*; (3) to practice midwifery.

These are the only provisions in the present act which authorize an applicant for a drugless license to be examined in obstetrics without being also examined in materia medica, surgery, ''therapeutics, and theory and practice'' (of medicine?) as provided in section 12, Cahill's St. ch. 91, ¶ 12, and it is apparent from the foregoing quotations that the legislature intended that the special examination in obstetrics provided for in section 9 must be given at the same time as the examination for a drugless license is given, and not after a license has been issued to the applicant, for it is only by giving this construction to sections 9 and 11 that any effect can be given to the words ''in the same instrument'' found in the last clause of section 11 above quoted. The evidence shows that this is

and has been the construction placed by the department of registration and education upon sections 9 and 11 of the present act, and we think the ruling is correct.

It follows from this construction that if the license now held by the relator does not include the practice of obstetrics, nevertheless, as there is no provision in the present act under which he can be given an additional or special license to practice obstetrics, and as the record shows that he is fully qualified to do so, he is entitled to practice obstetrics under his license as it stands, without violating any law of this State. Any other construction of the act in this respect would deprive the relator of his constitutional rights as held in the cases above cited. The examination provided for in section 12, including obstetrics, surgery, materia medica, therapeutics and theory and practice of medicine, is clearly open only to those who, having a drugless license, desire to obtain a license to practice medicine "in all its branches," and not to a licensee who desires to be examined only as to his qualifications to practice obstetrics, in order to remove any question as to his right to do so.

It is urged by defendants that the Supreme Court in *People v. Witte*, 315 Ill. 282, and *People v. Walder*, 317 Ill. 524, reversed, in effect, the ruling of the department of registration and education as to the construction of sections 9 and 11 above mentioned. We find nothing in the opinions filed in those cases that is inconsistent with that ruling, or showing that the proper construction to be given to sections 9 and 11 upon the question raised in this case was in any way considered.

We may also add that we think it is no answer to the petition in this case to say that the relator may, if he chooses, secure from the State a separate license to practice midwifery. That is not the kind of license he needs in his practice, as the evidence shows, and we know of no principle that would compel him to take

an examination for a license which he does not want and which he testified would ruin his practice if he were required to use it.  He testified that there is a recognized distinction between the practice of midwifery and of obstetrics, in this, that a midwife handles obstetrical cases only when a normal birth occurs, but "as soon as the case becomes pathological," it is beyond the scope of a midwife's practice, and requires the attention and skill of a physician.

For the reasons stated the judgment is affirmed.

*Affirmed.*

GRIDLEY, P. J., and BARNES, J., concur.