ILLINOIS POLYGRAPH SOCIETY *et al.*, Plaintiffs-Appellees, *v.* ANTHONY PELLICANO, Defendant-Appellant.

First District (3rd Division)    No. 78-771

Opinion filed November 14, 1979.

Robbins, Coe, Rubinstein & Shafran, Ltd., of Chicago (Michael D. Schlesinger, of counsel), for appellant.

Charles F. Marino, of Chicago, for appellees.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:

May polygraph operators halt the use of a competitive technique for detecting deception by enjoining a competitor from holding himself out as a qualified examiner and from administering exams to detect

deception? In this case the plaintiffs sought to accomplish this by invoking the Illinois detection-of-deception-examiners act (Ill. Rev. Stat. 1977, ch. 111, pars. 2401-2432) (the Act), which provides for the licensing and regulation of detection-of-deception examiners. To resolve this appeal, it is necessary to consider only the defendant's contention that section 3 of the Act, which mandates that every examiner licensed under the Act use a polygraph machine, is special legislation which violates the State constitution. The provision of section 3 of the Act which the defendant challenges states:

> "Every examiner shall use an instrument which records permanently and simultaneously the subject's cardio-vascular and respiratory patterns as minimum standards, but such an instrument may record additional physiological changes pertinent to the detection of deception." (Ill. Rev. Stat. 1977, ch. 111, par. 2403.)

Section 1 of the Act defines the word "examiner" as used in the Act as "any person who uses any device or instrument to test or question individuals for the purpose of detecting deception."

The polygraph instrument, commonly known as the lie detector, as required by the Act records simultaneously the cardiovascular and respiratory patterns of the person being examined to determine whether he is being truthful. It is the only instrument in commercial use which can be used to satisfy the minimum standards set forth in section 3 of the Act.

The individual plaintiffs are trained polygraph operators, licensed under the Act by the Illinois Department of Registration and Education (the Department) as detection-of-deception examiners (examiners). The plaintiff, Illinois Polygraph Society, to which the individual plaintiffs belong, is an organization of licensed examiners who use the polygraph instrument.

The defendant is engaged in the occupation of detecting deception. He is neither licensed as an examiner, nor has he sought to be licensed. Instead of the polygraph instrument, he uses a patented device known as the Dektor PSE-1 (PSE) to detect deception. The defendant's device is a psychological stress evaluator, which detects, measures and graphically displays inaudible frequency modulations of the human voice, the strength and pattern of which indicate the degree of psychological stress in the speaker. Unlike the polygraph, the PSE does not require that the person being interrogated be attached to the instrument by wires, and does not record either cardiovascular or respiratory patterns as section 3 of the Act requires. The PSE did not come into commercial use until 1970, 7 years after the Act was passed.

The controversy between PSE operators and polygraph operators has been waged for several years. Former directors of the Department have issued conflicting opinions on whether the use of the PSE without a

polygraph would be grounds for revocation of an examiner's license. Prior to August 10, 1974, Director Barringer said it would; on October 8, 1975, Director Stackler said it would not. The defendant himself was the subject of a suit in the circuit court of Cook County instituted by the Department to enjoin his use of the PSE alone to detect deception. That suit, People *ex rel.* Ronald Stackler v. Anthony J. Pellicano, was voluntarily dismissed by the Department after Director Stackler filed an affidavit in which he expressed his opinion that to enjoin use of the PSE based on the licensing act here at issue would be an unreasonable restraint of trade.

The present complaint, which the defendant sought to dismiss, alleges that without a license Pellicano holds himself out as a detection-of-deception examiner and administers detection-of-deception examinations, and in doing so is violating the Act. Alleging that the defendant's activities have reduced the income of the plaintiffs and the members of the plaintiff society, the plaintiffs sought to enjoin the defendant from administering exams or holding himself out as an examiner. The circuit court denied the defendant's motion to dismiss the complaint, ruling that the defendant was subject to the Act, that the Act was constitutional, that plaintiffs were licensed members of a profession subject to license pursuant to the Act and, therefore, had standing to sue, and that they lacked an adequate remedy at law. The defendant was allowed to file an interlocutory appeal under Rule 308.

The effect of section 3 of the Act is to ban the use in Illinois of all instruments for detecting deception, including the PSE, unless they are used in conjunction with the polygraph machine. (1976 Op. Atty. Gen. No. S-1082.) Since sole reliance on other devices is not outlawed, provided they are used in conjunction with the polygraph, we must assume that the legislature meant to make no statement in providing for the licensing of detection-of-deception examiners about the comparative reliability of the polygraph in detecting deception. It should be noted, by comparison, that other States, when concerned about reliability of devices for detecting deception, have taken direct steps, and have not resorted to regulation through a licensing statute. (See, for example, N.Y. Labor Law §§733-739 (McKinney 1978) (use of the PSE not allowed in employment situations); Cal. Labor Code §432.2 (West 1978) (use of polygraph not allowed in employment situations); Mass. Ann. Laws, ch. 149, §19B (Michie/Law. Co-op 1976) (use of any lie detector not allowed in employment situations); Cal. Penal Code §637.3 (West 1978) and 18 Pa. Cons. Stat. §7507 (1978) (use of the PSE without consent of the examinee an offense).) The Illinois legislature, while not forbidding use of deception detectors, did cast doubt on their reliability when it enacted the lie-detector-tests act (Ill. Rev. Stat. 1977, ch. 38, par. 155—11) and section 54.1 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 54.1). The

former bars the use of any lie detection device, including the polygraph, in a criminal trial; the latter forbids the use of the results of a polygraph test or of the questioning of a witness under the effect of a chemical substance in a civil trial. Even though the licensing act at issue here requires that a licensed examiner who chooses to use another device must also use a polygraph, the Act permits the examiner to rely on the test results produced by the other equipment, to the complete exclusion of the polygraph results. By permitting an examiner, who wishes to do so, to ignore the polygraph results, the Act makes use of the polygraph by such an examiner superfluous.

The Act also requires anyone seeking to use the PSE or any device other than the polygraph to be trained in the use of the polygraph. This requirement is imposed regardless of whether the examiner desires to use the polygraph. To comply with the Department's regulations for becoming a licensed examiner, an applicant must undergo formalized instruction which is focused on use of the polygraph to the exclusion of all other devices. The potential licensee who wishes to use the PSE is therefore required to take training which is irrelevant to his area of professional expertise.

Article IV, section 13 of the 1970 Illinois Constitution forbids the passage of special laws when general laws can be made applicable, and leaves to the courts the task of determining whether a general law can be made applicable. This provision has recently received attention in *Anderson v. Wagner* (Docket Nos. 50880, 50980, 50981 cons., filed Oct. 2, 1979), ___ Ill. 2d ___, ___ N.E.2d ___. The court reviewed the history of the special legislation provision and referred to the analysis in G. Braden & R. Cohn, The Illinois Constitution: An Annotated and Comparative Analysis 203-26 (1969), saying:

> "* * * [Braden & Cohn] pointed out the difference between 'real' special legislation, such as that specifically prohibited in the prior constitution which had ceased to be a problem, and nonreal special legislation. Nonreal special legislation was simply general legislation challenged on equal protection grounds. They felt that, though the legislature no longer attempted to enact 'real' special legislation, the prohibition against the enactment of special legislation should be retained in the constitution in general terms to guard against any attempt to do so." (*Anderson*, ___ Ill. 2d ___, ___.)

The court in *Anderson* noted that the drafters of the Illinois Constitution of 1970 closely followed Braden and Cohn's advice.

As first stated in *Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 110, 281 N.E.2d 317, 321, the test for what is special legislation is unchanged under our 1970 Constitution. However, whether the real special legislation strand of article IV, section 13 or the nonreal special legislation strand of

article IV, section 13 (the equal protection provision in disguise) is at issue, the test applied by the court is substantially the same. Traditional deference is to be given to the legislative classification (*Anderson v. Wagner* (Docket Nos. 50880, 50980, 50981 cons., filed Oct. 2, 1979), ___ Ill. 2d ___, ___ N.E.2d ___), and if there is a reasonable basis for it, the statute passes constitutional muster. (See 22 DePaul L. Rev. 63, 79 (1972).) If the classification does not bear a reasonable relationship to the purposes of the act and the evil it seeks to remedy, the statute is unconstitutional as special legislation. *Skinner v. Anderson* (1967), 38 Ill. 2d 455, 231 N.E.2d 588.

■■■ Whether this act is attacked as real or as nonreal special legislation, the result is the same—the Act is unconstitutional. When considered as "real" special legislation, the Act grants to the polygraph and the proponents of its method a statutory preemption of the field of detection of deception. The 1870 Constitution explicitly listed prohibited instances of special laws. Among these were statutes which granted any " 'exclusive privilege, immunity or franchise * * *.' " In appraising the reach of this provision, the court said in *Dunbar v. American Telephone & Telegraph Co.* (1909), 238 Ill. 456, 486, 87 N.E. 521, 533:

> "The public policy of the State on any question is to be sought for in the constitution and legislation as interpreted and expounded by the courts. Section 22 of article 4 of the constitution of 1870 provides that the General Assembly shall pass no local or special law 'for granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever.' This is a clear declaration that the public policy of this State is opposed to all exclusive and monopolistic franchises and powers, of whatsoever kind or character."

The Act grants polygraph operators a monopoly over the field. Under the guise of an occupational license, section 3 of the Act prohibits any person from pursuing the occupation of deception detection unless the polygraph is used. Regardless of any other detection technique which is available, the Act compels examiners to use the polygraph. By virtue of the statute, the sale of polygraph instruments in Illinois is enhanced, while other instruments, like the PSE, are placed at a competitive disadvantage. Section 3 likewise excludes from the detection-of-deception occupation all those untrained in the use of the polygraph who are nevertheless expert in the use of other devices employed in detecting deception.

The Act as written and as plaintiffs attempt to enforce it demonstrates the stifling effect a legislatively granted monopoly has on scientific advances. Although such advances and the introduction of new techniques and instruments for detection of deception could reasonably

be anticipated, the Act leaves no room for the development of the art. New devices of far greater reliability or which can be more conveniently used in specific circumstances might achieve wide-spread use and acceptance (even among the Illinois examiners committee), yet the statute requires that the polygraph still be used. The restrictions of the Act are so sweeping that when the PSE was developed, its use by experts was already banned in Illinois unless employed in conjunction with the polygraph. Advances in medical technology have come about and benefited the public because technicians were not restricted by statute to any specific machine or device, but were left free to experiment with new methods and techniques. This statute stunts advances of that type in the field of detecting deception.

As *Anderson* instructed, a statute granting a monopoly is not a violation of article IV, section 13 if it is reasonable, but this act is not reasonable. It carves out a special franchise for the polygraph, and yet does not require a licensed examiner to pay any attention at all to the results of a polygraph test. Deception detectors are unreasonably forced to bear the cost of owning and operating a device which the legislature has not told them to refer to in arriving at their professional opinion. The Act not only is not reasonably related to a valid legislative purpose (*Skinner v. Anderson* (1967), 38 Ill. 2d 455, 231 N.E.2d 588), it has no relationship whatsoever to the protection of the public health, safety and welfare.

When considered as "nonreal" special legislation, the Act is also unconstitutional. It discriminates against deception detectors who use any lawful means other than the polygraph. Those who use a device like the PSE must spend the time and money required to become proficient in the use of the polygraph, a device whose reliability the legislature made no attempt to evaluate in the licensing scheme. Polygraph operators, on the other hand, need not undergo special training in the use of the PSE to gain a license as an examiner. The Act carved out the occupation of deception detection, and handed its control to a select group within the field, polygraph operators. This imposed an irrational and artificial barrier to persons not wishing to use the polygraph but still wishing to become licensed examiners. The Act thus drew a line through the field of detection deception, placing polygraph operators on one side and all others on the opposite side.

■■ This legislative classification, to be constitutional, should have been reasonable. (*Anderson v. Wagner* (Docket Nos. 50880, 50980, 50981 cons., filed Oct. 2, 1979), ___ Ill. 2d ___, ___ N.E.2d ___.) As noted before, it was not, since the mandated use of the polygraph has no reasonable relation to either reliability of detection of deception or to protection of the public

health, safety or welfare. The classification in favor of polygraph operators discriminated against the technique used by the defendant and perhaps other techniques as well, and was irrational, arbitrary and void.

Whether as a grant of special privilege or as a discriminatory classification, the Act was special legislation. *People v. Schaeffer* (1923), 310 Ill. 574, 142 N.E. 248, held that a medical licensing act was special legislation which denied the constitutional rights of osteopaths. The act in question required osteopaths to be graduates of both a medical school and a school of osteopathy before they were eligible for examination for a license to practice osteopathy. A graduate of a medical school, on the other hand, was permitted to practice both medicine and osteopathy without studying osteopathy. The court stated that the licensing act discriminated against osteopaths because it required them to study the therapeutics taught in medical colleges even though they did not desire to use them in their practices, while the graduate of a medical school, although "not required to graduate in osteopathy or to study osteopathic therapeutics, may be licensed to practice, and may practice osteopathy." The court viewed the statute both as a denial of equal protection under the Federal Constitution and as legislation granting a special privilege in violation of the State constitution. Just as in *Schaeffer*, here the defendant is forced to study and use a polygraph technique which he does not desire to use in his practice, while the polygraph operators can rely entirely on the PSE without any special training in that device. The Act here is similarly a denial of equal protection as well as a grant of a special statutory privilege.

In our opinion it is not permissible for the legislature under the guise of an occupational licensing statute to require the specific type of device a professional is to use in pursuing his or her occupation. By interfering with the use of the PSE as it does, the Act constitutes special legislation in favor of polygraph operators. The legislature could have passed a general law regulating the occupation of detection of deception. It could have ordered the Examiner Committee to certify only those persons who demonstrate knowledge of and familiarity with the principles of detecting deception, and who are competent in a technique adequate for that purpose. By mandating use of the polygraph, however, the Act violated article IV, section 13 of the Illinois Constitution of 1970.

Because section 3 of the Act is unconstitutional in the respects set forth above, the plaintiffs should not have been permitted to enforce it against the defendant, and the complaint fails to state a cause of action. The circuit court should have granted the defendant's motion to dismiss.

Judgment reversed.

McGILLICUDDY and RIZZI, JJ., concur.