(No. 52905.—

# ILLINOIS POLYGRAPH SOCIETY *et al.,* Appellants, v. ANTHONY PELLICANO, Appellee.

*Opinion filed December 1, 1980.*

Charles F. Marino and Fred E. Inbau, of Chicago, for appellants.

Robbins, Coe, Rubinstein & Shafran, Ltd., of Chicago (Michael D. Schlesinger and James M. De Zelar, of counsel), for appellee.

William J. Scott, Attorney General, of Springfield (Paul J. Bargiel, Assistant Attorney General, of counsel), for *amicus curiae* the Department of Registration and Education.

MR. JUSTICE CLARK delivered the opinion of the court:

The plaintiffs, Illinois Polygraph Society, an Illinois not-for-profit corporation, Carl S. Klump and Richard Needham, brought an injunctive action in the circuit court of Cook County. The plaintiffs sought to enjoin the defendant, Anthony Pellicano, from administering detection-of-deception examinations or from holding himself out as a detection-of-deception examiner since the defendant was not licensed under "An Act to provide for licensing and regulating detection of deception examiners ***" (the Act) (Ill. Rev. Stat. 1975, ch. 38, par. 202–1 *et seq.*, now Ill. Rev. Stat. 1979, ch. 111, par. 2401 *et seq.*). The defendant filed a motion to dismiss the complaint, alleging that the Act is unconstitutional and that the plaintiffs lacked standing to sue. After a hearing the circuit court denied the motion and certified that there was no just reason to delay an appeal from its order. The appellate court reversed, deciding that section 3 of the Act (Ill. Rev. Stat. 1975, ch. 38, par. 202–3, now Ill. Rev. Stat. 1979, ch. 111, par. 2403) is special legislation in violation of article IV, section 13, of the 1970 Illinois Constitution. (78 Ill. App. 3d 340.) We allowed the plaintiffs' petition for leave to appeal. (73 Ill. 2d R. 315.) We reverse.

From our review of the record, the briefs and appendices of the parties and the *amicus curiae* brief of the Attorney General, the following facts emerge.

The defendant uses a device known as a psychological stress evaluator (PSE) in conducting detection-of-deception examinations. A PSE is an instrument which detects, measures and graphically displays certain stress-related components of the human voice. (A. Moenssens & F. Inbau, Scientific Evidence in Criminal Cases 638 (2d ed. 1978).) A PSE records microtremors or what the manu-

facturer of one brand calls "guilt-revealing sound variations" in a person's voice which, according to its proponents, enable an examiner to discern the stress a person is under. From that data, an examiner is purportedly able to tell whether a person is telling the truth.

The allegations in the complaint, which must be taken as true (*Collier v. Wagner Castings Co.* (1980), 81 Ill. 2d 229, 232), show that the plaintiff, Illinois Polygraph Society, is a not-for-profit corporation whose membership consists of detection-of-deception examiners licensed by the Department of Registration and Education (Department). The individual plaintiffs, Carl S. Klump and Richard S. Needham, are licensed, practicing detection-of-deception examiners. They are also members of the plaintiff Society. The defendant presently conducts examinations using the PSE. He has not applied for, and does not possess, a license as a deception-detection examiner as required by the Act (Ill. Rev. Stat. 1975, ch. 38, par. 202—4, now Ill. Rev. Stat. 1979, ch. 111, par. 2404). Nor does the defendant possess an internship license as provided for under the Act (Ill. Rev. Stat. 1975, ch. 38, par. 202—12, now Ill. Rev. Stat. 1979, ch. 111, par. 2413). Further, the complaint alleges that the plaintiffs' and the public's rights are being infringed by defendant's failure to comply with the Act. Also, it is alleged that the governmental officers charged with enforcing the Act have failed to do so against the defendant, leaving the plaintiffs to suffer irreparable harm without an adequate remedy at law.

The defendant's motion to dismiss the complaint alleged that: (1) the plaintiffs' lacked standing to maintain this suit because (a) no property right in a license was established, (b) only the Director of Registration and Education may enjoin violations under the Act; and (c) the plaintiffs have an adequate remedy at law; (2) section 1 of the Act (Ill. Rev. Stat. 1975, ch. 38, par. 202—1, now Ill.

Rev. Stat. 1979, ch. 111, par. 2401), defining "Detection of Deception Examiner" is impermissibly vague and thus violates due process; (3) the same section is overbroad and therefore unconstitutional; (4) section 11 of the Act (Ill. Rev. Stat. 1975, ch. 38, par. 202–11, now Ill. Rev. Stat. 1979, ch. 111, par. 2412), permitting an examiner committee to conduct examinations without also prescribing standards, is unconstitutional; and (5) "the Statute" violates the special legislation provision of the Illinois Constitution (Ill. Const. 1970, art. IV, sec. 13) in that it confers special privileges upon licensed examiners granting them an arbitrary and exclusive right to determine who may be licensed under the Act. Also, since section 1 requires that an intern be examined for a license without requiring the examiner to conduct an examination, it grants a "monopolistic special privilege" to examiners.

The circuit court, in a cogent and exhaustive memorandum opinion, disagreed with the defendant and, on February 8, 1978, denied that motion to dismiss as well as a subsequent motion to dismiss the defendant had filed.

Initially, it is argued by the plaintiffs that the appellate court should not have considered the constitutionality of section 3 because that issue was not raised by the defendant at the trial level. We disagree because the defendant alleged in his motion to dismiss that "the Statute" was special legislation. Section 3 would be included in this broad statement. Moreover, in his memorandum in support of his motion to dismiss, the defendant argued the precise point considered by the appellate court, saying in effect that section 3 gave a monopoly in perpetuity to polygraph operators. Therefore, the issue was properly before the appellate court.

The appellate court based its reversal of the circuit court on the ground that section 3 of the Act is special legislation. That provision reads:

"Every examiner shall use an instrument which records

permanently and simultaneously the subject's cardio-vascular and respiratory patterns as minimum standards, but such an instrument may record additional physiological changes pertinent to the detection of deception. An examiner shall, upon written request of a person examined, make known the results of such test to the person examined within 5 days of receipt of the written request." (Ill. Rev. Stat. 1979, ch. 111, par. 2403.)

The parties state that the only instrument which records both a subject's cardiovascular and respiratory patterns is what is commonly called a polygraph machine.

The appellate court held that section 3 of the Act is defective as special legislation because it grants a statutory preemption of the field of detection of deception to those persons trained to use a polygraph machine. (78 Ill. App. 3d 340, 344.) The court continued that a statute which grants a monopoly is not special legislation if it is reasonable, but that this act is unreasonable since it permits a licensed examiner to ignore the results of a polygraph test, thereby making superfluous the requirement that an examiner use a polygraph.

The court also concluded that the Act is special legislation because it creates an unreasonable classification which is not reasonably related to the detection of deception or the protection of the public health, safety or welfare. That is because the Act requires the use of the polygraph, which favors polygraph operators and discriminates against those who use other deception-detection devices. The appellate court further held that the statute is unreasonable because, to be licensed under the Act, a person must complete a six-month course of study prescribed by the Department of Registration and Education which includes "History of Polygraph" and "Polygraph Technique." The appellate court concluded that, since polygraph results may be ignored in favor of another device such as a PSE, such courses are irrelevant to a potential licensee's area of professional expertise.

We are constrained to disagree with the conclusion of the appellate court since it assumes that while an examiner must use an instrument which records cardiovascular and respiratory patterns as minimum standards, an examiner is free to ignore the results which that instrument yields. We must presume that the statute is rational, and any construction which would bring about an illogical result must be discarded. (*People v. Warren* (1977), 69 Ill. 2d 620, 628.) Also, where upholding the constitutionality of a legislative enactment is a reasonable alternative, we have the obligation to do so. *Anderson v. Schneider* (1977), 67 Ill. 2d 165, 176.

Therefore, we think the statute means that an examiner must use an instrument which records cardiovascular and respiratory patterns and must also use the results obtained from the test in formulating any analysis. It would be incongruous to require that a certain instrument be used in an examination but to permit the results from that examination to be ignored. We hold therefore that section 3 of the Act requires that cardiovascular and respiratory-pattern recordings must be used in any analysis of a detection-of-deception examination.

Also, due to our holding that cardiovascular- and respiratory-pattern results must be considered in any analysis of a deception-detection examination, we think that the courses in polygraph history and technique are reasonably related to the legislative scheme and thus are calculated to enhance the expertise of the prospective licensee. See *People v. Johnson* (1977), 68 Ill. 2d 441, 447.

In light of the foregoing construction of section 3, we look now to whether it is special legislation. Special legislation confers a special benefit or exclusive privilege on a person or a group of persons to the exclusion of others similarly situated. (*Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 109-110.) It arbitrarily, and without a sound,

reasonable basis, discriminates *in favor of* a select group. Such legislation differs from "local laws" because it is not limited to a geographical portion of the State. (*Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 109; G. Braden & R. Cohn, The Illinois Constitution: An Annotated and Comparative Analysis 206 (1969).) Special legislation differs from a violation of equal protection in that the latter consists of arbitrary and invidious discrimination *against* a person or a class of persons. It results from the governmental withholding of a right, privilege or benefit from a person or a class of persons without a reasonable basis (or, where a fundamental right or suspect classification is involved, a compelling State interest) for doing so. Whether a law is attacked as special legislation or as violative of equal protection, it is still the duty of the courts to decide whether the classification is unreasonable in that it preferentially and arbitrarily includes a class (special legislation) to the exclusion of all others, or improperly denies a benefit to a class (equal protection). (See *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 315.) While certain pieces of legislation may be attacked as both special legislation and violative of equal protection since they confer a benefit on one class while denying a benefit to another, there will be many cases where a benefit is conferred on one class to which no other class has a right. In those cases, legislation would be attacked as special legislation but not as violative of equal protection.

The General Assembly has made a legislative judgment that to assure reasonably reliable and consistent detection-of-deception examinations, recordings of cardiovascular and respiratory patterns, at the least, are needed. While the ability and experience of each examiner may vary, the minimum objective standard will remain uniform. Also, an examiner may attempt to improve the reliability of the examinations he gives by using equipment which records additional physiological changes, such as galvanic

skin reflex, inaudible voice tremors, and muscular movements and pressures.

This case is distinguishable from *People v. Schaeffer* (1924), 310 Ill. 574, which struck down the medical practice acts of 1917 and 1899. Those acts arbitrarily exempted graduates of Illinois medical schools from taking a licensing examination, while requiring osteopaths who had studied the subjects necessary to be an osteopath in a college or hospital nonetheless to graduate from a medical school and pass a licensing examination. The court said: "This statute therefore tends to deprive the osteopaths of their constitutional right to practice surgery, who are, so far as this record shows, just as efficient and as well prepared by college and hospital training to practice surgery as are the physicians of the medical schools. The act is therefore void as to such physicians so deprived." (310 Ill. 574, 583.) The comparison between osteopaths and users of the PSE is not parallel. There is still enough doubt about the reliability of detection-of-deception instruments, and the varying expertise of those who use them, to justify the General Assembly's decision to set minimum standards which prefer one instrument over another. As the appellate court correctly pointed out, the General Assembly cast some doubt on the reliability of deception-detection instruments when it forbade the use of the results of any lie-detection device in criminal trials (Ill. Rev. Stat. 1977, ch. 38, par. 155—11) and provided that a court may not require a party in civil cases to submit to a lie-detector test or to questioning under the effect of any chemical substance (Ill. Rev. Stat. 1977, ch. 110, par. 54.1). See *Illinois Polygraph Society v. Pellicano* (1979), 78 Ill. App. 3d 340, 342-43.

We therefore think the legislative standard chosen by the General Assembly is reasonable and is well suited to encourage advances in the state of the art, while limiting inconsistent examination results based on the use of in-

struments which record different physiological changes and thus cannot be compared to one another. Section 3 of the Act, since it is reasonable, does not confer a monopoly upon licensed examiners. Also, by establishing a minimum standard of reliability, section 3 creates a classification that is reasonably related to the protection of the public health, safety and welfare. (*Anderson v. Wagner* (1979), 79 Ill. 2d 295, 315.) Section 3 is general and not special legislation.

We turn now to a discussion of whether the remainder of the Act is special legislation. The defendant contends that the Act bestows an exclusive privilege upon licensed examiners and arbitrarily and unreasonably excludes persons from becoming licensed under the Act.

The Act and the regulations promulgated thereunder are designed to train and license detection-of-deception examiners since that occupation has been legislatively determined to affect the public health, safety and welfare. (Ill. Rev. Stat. 1975, ch. 38, par. 202—2, now Ill. Rev. Stat. 1979, ch. 111, par. 2402.) Section 12 of the Act specifies that the Department shall issue an internship license to a trainee upon application and payment of the required fee to the Department, and that such a license is valid for 12 months but may be extended up to another 12 months for good cause shown. (Ill. Rev. Stat. 1979, ch 111, par. 2413.) To become fully licensed as an examiner an intern must study the detection of deception and administer detection-of-deception examinations under the personal supervision and control of an examiner in accordance with a course of study prescribed by the Department at the commencement of the internship. (Ill. Rev. Stat. 1975, ch. 38, par. 202—1, now Ill. Rev. Stat. 1979, ch. 111, par. 2401.) Also, an intern must satisfactorily complete at least six months of such training (Ill. Rev. Stat. 1975, ch. 38, par. 202—11(G), now Ill. Rev. Stat. 1979, ch. 111, par. 2412(G)), must possess at least a baccalau-

reate degree from a college or university accredited by the Department, and must pass an examination conducted by the Examiner Committee, or under its supervision, to determine the intern's competence to be licensed as an examiner (Ill. Rev. Stat. 1979, ch. 111, par. 2412(E)). The license is issued by the Department upon application by the intern and after the Department is supplied with "such information as in the judgment of the Department will enable [it] to pass on the qualifications of the applicant for a license." (Ill. Rev. Stat. 1975, ch. 38, par. 202–8, now Ill. Rev. Stat. 1979, ch. 111, par. 2409.) Further, section 7 of the Act authorizes the creation of the Detection of Deception Examiner Committee. It reads:

"None of the powers, duties or functions of the Department or the Director thereof under this Act shall be exercised except under the action and written report of the Detection of Deception Examiner Committee. Such Committee shall be composed of 5 individuals appointed by the Director. The members of the Committee shall have been engaged continuously in the State of Illinois for a period of at least 5 years as examiners. Three members must be actively engaged in the private, or commercial, practice of detection of deception and 2 members must be primarily engaged in the detection of deception for the State of Illinois or a county or municipality within the State of Illinois. Each member shall serve for a term of 5 years.

The action or report in writing of a majority of the Committee shall be sufficient authority upon which the Director of Registration and Education may act. In designating the persons to act, the Director of Registration and Education shall give due consideration to recommendations by members of the profession and by organizations therein. Whenever the Director is satisfied that substantial justice has not been done in an examination, he may order a re-examination by the same or other examiners." Ill. Rev. Stat. 1975, ch. 38, par. 202–7, now Ill. Rev. Stat. 1979, ch. 111, par. 2407.

In *People v. Johnson* (1978), 68 Ill. 2d 441, this court

struck down the Illinois Plumbing License Law (Ill. Rev. Stat. 1973, ch. 111½, pars. 116.36 through 116.67) as special legislation. It was held there that regulations which authorized the purported alternative to apprenticeship of attending an educational institution were neither reasonably related to gaining expertise in plumbing nor sufficiently specific to protect the public health or adequately inform a potential licensee of the studies needed to become a plumber. The alternative to a five-year apprenticeship was thus illusory, and the apprentice provision of the law was found to confer upon licensed plumbers a monopolistic right to instruct and to control entry into the trade. (68 Ill. 2d 441, 450.) In *Johnson,* this court set down a test to determine whether an apprenticeship provision is valid: (1) the provision "must not have the effect, when implemented, of conferring on members of the trade a monopolistic right to instruct, and (2) [it] must be structured in such a way that the apprenticeship it requires is calculated to enhance the *** expertise of prospective licensees." 68 Ill. 2d 441, 447.

In *People ex rel. Chicago Dental Society v. A.A.A. Dental Laboratories, Inc.* (1956), 8 Ill. 2d 330, portions of "An Act to regulate the practice of dental surgery and dentistry ***" (Ill. Rev. Stat. 1955, ch. 91, par. 60) were upheld as general and not special legislation. The provision most sharply disputed stated that only persons employed or engaged by licensed dentists could construct or repair, extra-orally, dentures, bridges or other replacements for teeth or parts of teeth. (8 Ill. 2d 330, 332.) This court distinguished that statute from the plumbing license laws previously invalidated in *People v. Brown* (1950), 407 Ill. 565, and *Schroeder v. Binks* (1953), 415 Ill. 192, on the ground that they were special legislation. The court stated in *A.A.A. Dental Laboratories*:

"There is in the present case no prescribed economic hierarchy, with access to each succes-

sive stage controlled by the dominant interest. Any person is free to become a dental laboratory technician. The statute places no artificial restraint upon him. His success is determined by the normal process of competition. By the statute his direct dealings are limited to those who are peculiarly fitted by education and training to judge the quality of his work. But in this restriction there may be protection for members of the public who lack the capacity to make an informed appraisal of the quality and value of the product, and protection as well for the economic independence of a profession serving public health needs. The General Assembly has regarded the limitation in the statute as necessary to protect the public and the dental profession, and we are unable to say that its determination is entirely without foundation." 8 Ill. 2d 330, 337.

Taking the foregoing principles into account, we conclude that the present act, as implemented, is constitutional. Under the express terms of the Act, any person may obtain an internship license simply by applying and paying the required fee (Ill. Rev. Stat. 1979, ch. 111, par. 2413). No allegation has been made, and we refuse to assume without proof, that instruction by licensed examiners is not available, or is arbitrarily withheld. There is no requirement under the Act that an intern must be employed for a period of years, as required under the invalid plumbing license laws, before he may become a licensed examiner. Instead, the intern need only complete 250 clock hours of study which is prescribed by departmental regulations. (Ill. Rev. Stat. 1979, ch. 111, par. 2401; Regulations Promulgated For The Administration And Enforcement Of The Illinois Detection Of Deception Examiners Act, Reg. I (1975).) Some of the courses, such as psychology, law, and physiology, need

not be taught by licensed examiners, but instructors must be approved by the Department and the Examiner Committee. (Reg. I.) Therefore, licensed examiners do not possess a monopolistic right to instruct prospective licensees. *People v. Johnson* (1977), 68 Ill. 2d 441, 450.

While it is true, as argued by the defendant, that the Act does not contain an express requirement that examinations be conducted on a regular basis, that omission does not exclusively empower licensed examiners to control entry to the trade. The Act does provide that internship licenses are issued for a term of one year. (Ill. Rev. Stat. 1979, ch. 111, par. 2413.) Since no allegation has been made to the contrary, we assume that examinations are held at regular intervals, so that interns may complete their training and become licensed without needing to obtain a renewed or extended internship license. Moreover, we do not think the fact that the Examiner Committee conducts and grades the examinations invalidates the Act. Upon the action or written report of a majority of the committee the Department may act to issue licenses to qualified applicants. (Ill. Rev. Stat. 1979, ch. 111, par. 2407.) If, however, the Director is satisfied that substantial justice has not been done in an examination, he may order a reexamination by the same or other examiners. (Ill. Rev. Stat. 1979, ch. 111, par. 2407.) And, of course, judicial review of a final administrative decision is available to any applicant whose rights are violated. (Ill. Rev. Stat. 1975, ch. 38, par. 202–20, now Ill. Rev. Stat. 1979, ch. 111, par. 2421.) Additionally, it is the Department itself which issues licenses, even though licensed examiners conduct examinations of prospective licensees. Section 60 of the Civil Administrative Code of Illinois (Ill. Rev. Stat. 1975, ch. 127, par. 60) specifies that the Department of Registration and Education conducts examinations and passes upon "applicants for reciprocal licenses, certificates [licenses], and authorities." The

Examiners Committee thus conducts examinations on behalf of the Department and subject to the Department's approbation. In this way, the public is protected because those who are peculiarly fitted to judge the applicant's fitness for a license do so, but it is the Department which has the final word on the issuance of licenses.

Moreover, no representation has been made that any artificial or arbitrary restraint has been placed in the path of a prospective licensee. No allegation has been made that a qualified applicant desirous of becoming licensed has been unable to obtain instruction, to be examined, or has been examined unfairly, or has been refused a license. In the absence of such allegations, we refuse to impute arbitrary and unreasonable actions on the part of the Examiner Committee or the Department. From all appearances, the shared authority of the Committee and the Department is exercised in a reasonable manner.

Therefore, under these circumstances, we do not agree with the defendant that a monopolistic right to control entry to the trade exists.

Finally, we view the 250 hours course of study required by the Department to be reasonably structured to enhance the expertise of prospective licensees as detection of deception examiners. Accordingly, we conclude that the Act and regulations promulgated thereunder do not offend the special legislation clause of the Illinois Constitution. For the foregoing reasons, the judgment of the appellate court is reversed and this cause is remanded to that court for a consideration of the other issues raised in that court.

*Reversed and remanded,*
*with directions.*